## G. S. MITCHELL et al. *v.* J. M. BISHOP.

**Notice — Subrogation.**

> Where R. purchased land with notice that parties in interest did not join in the conveyance, he, and those claiming under him, will be denied subrogation to the rights of grantor's creditors.[1]

Mitchell and others, appellants, were complainants, and J. M. Bishop, appellee, was defendant, in the court below. From a decree dissolving an injunction and denying complainants' prayer for relief against defendant, complainants appealed to the Supreme Court.

The bill of complaint alleged, in substance:

That one Russell T. Jones, was, during his lifetime, seized and possessed of certain lands and other property; that on or about January 3, 1862, in consideration of $10 and of his wish to divide the balance of his estate equally among his eight children, he con-

---

[1]

Subrogation applies only where one paying the debt of another stands in the relation of a surety, or is compelled to pay to protect his own rights. An administrator is under no obligation to pay a judgment against the intestate with his own funds, and if he does so, though for the purpose of saving something for the heirs, he will not be substituted to the right of the judgment creditor. But he would have the right to retain, out of the assets of the estate, the amount so advanced. Slaton *v.* Alcorn, 51 Miss. 72.

Where the purchaser of incumbered property pays off one of the incumbrances of equal dignity with those remaining, he will be entitled to be subrogated to the rights of that incumbrance, and to have a *pro rata* distribution of the proceeds of the property when sold to pay the incumbrances. Ross *v.* Wilson, 7 S. & M. 753.

The jurisdiction of equity to grant relief by subrogation rests largely upon the prevention of frauds and relief against mistakes, and the expansion of the rule has so nearly covered the field that it may now be said that wherever a court of equity will relieve against a transaction it will do so by the remedy of subrogation, if that be the most efficient and complete that can be afforded. Dorrah *v.* Hill, 73 Miss. 787.

One who is under no legal obligation to pay, but who, at the request of the debtor, discharges part of a debt secured by a deed of trust on his land, is not, in the absence of any agreement to that effect, express or reasonably inferable from the facts, entitled to be subrogated to the rights of such beneficiary. Good *v.* Golden, 73 Miss. 91.

veyed to said children certain lands together with some personal property, which constituted all the property then possessed by the grantor.

That the conveyance was a voluntary one and fraudulent and void as to the creditors of the grantor; and that shortly after the Civil War, when the courts were opened to creditors (having been closed by legislative enactment) the creditors of said Jones were seeking to enforce the collection of their claims, and were threatening to have said conveyance set aside as fraudulent as to them, and to have the proceeds arising from a sale of said lands under order of court applied to the payment of their claims; that, moved to action by the probability of such a proceeding, the said Jones and others (the grantees in the conveyance of January 3, 1862), conveyed to one James P. Rice a part of the aforesaid lands on July 23, 1866, for the sum of $2,300, which said sum was alleged to have been paid to one C. G. Mitchell, successor in the guardianship and administration of A. J. Duncan, deceased, who, as such guardian or administrator, or both, was alleged to be a creditor of said Jones at the time of the aforesaid alleged voluntary conveyance to a large amount, which said debt was alleged to have been secured by an unrecorded deed in trust. That said purchase money was paid to such creditor by Rice at the solicitation of the grantor, Jones, the creditor acting in good faith and on agreement and understanding between said Jones and Rice that such conveyance was null and void as to his other creditors, and that said Jones' children could only hold said property conveyed to them subject to Jones' debts thereon, and that as such purchase money paid by Rice was paid upon Jones' indebtedness, that the said Rice's rights should be subrogated to the rights of the said creditors and said conveyance be void as to them.

That complainants' title to said land deraigned from said Rice and that he and those claiming under him had been in open, continuous, notorious, and adverse possession of said lands since July 23, 1866, and in peaceable possession of said land until August, 1880, when an action of ejectment was brought by defendant J. M. Bishop in the Circuit Court of Union county against the complainants in this bill; the said Bishop claiming title by descent through his deceased wife and three deceased minor children.

The bill further alleged that Bishop's wife knew nothing of the aforesaid voluntary conveyance by said Jones and never accepted

same; that Bishop was barred by the Statute of Limitations from instituting his action of ejectment.

That at the time of such voluntary conveyance by Jones to his children, the said Harriet Bishop was residing in Grenada, Miss., a considerable distance from her father, the said R. T. Jones; that during her lifetime she set up no claim and exercised no acts of ownership to said land, wherefore said conveyance was void as to her.

That the defendant was prosecuting his action of ejectment without tender to complainants of their equitable portion of the purchase money paid for said land and applied to the payment of Jones' debts. The bill further alleged that Bishop's remedy was more complete in equity than in law and prayed that he be made a defendant to the bill and that he be enjoined from prosecuting his action of ejectment against complainants.

That the complainants or orators be decreed subrogated to the rights of the creditors of said Jones; that they were such at and before the execution of such voluntary conveyance.

Orators further prayed that said voluntary conveyance be declared null and void as to orators, with the alternate prayer that an account be taken of the proportion of purchase money, with interest, due by said Bishop, and that it be applied to the payment of Jones' debts, together with the value of the permanent and valuable improvements placed upon the land by orators; and that the proportions of the rent of said land that would be due said Bishop be offset against the other, and if an amount should be found to be due orators, that they be declared to have a lien on the interest of said Bishop in said land.

The bill concluded with a prayer that on final hearing the injunction prayed for be made perpetual.

The answer admitted the conveyance of January 3, 1862, but denied that it contained all the property of the grantor, and that said conveyance was fraudulent or void as to creditors, or any one else.

Denied that said Jones was largely indebted, and certainly not to the value of the property conveyed, but alleged that his indebtedness was for trifling sums, and that he was loaning money before and after said conveyance as shown by the deed itself.

Respondent denied that the many slaves conveyed in said deed were of little value at the time of conveyance, but alleged that

on account of recent victories of the Confederate army the people expected a successful termination of the war. Answer further denied that no property remained to said Jones at the close of the war.

Respondent knew nothing of the threats of creditors of Jones to enforce their claims and asked strict proof of same, and denied that Jones or any of his children knew that said conveyance could be successfully attached, and asserted said charges to be a slander upon Jones and his children; alleged Jones' ability to pay his debts and that if he ever were unable to pay any of his obligations such inability came about after said conveyance and was due to the defeat of the Confederate army. Respondent further denied that Jones and his children knew said conveyance to be void as to them and that Mrs. Bishop desired to join in said conveyance; but alleged that she never did join in such conveyance, but claimed the property as her own against all the world from the date of execution of such conveyance to the extent of her interest in said property.

Respondent alleged that Mrs. Bishop knew nothing of the alleged payment of $2,300 by Rice, nor of the application of same to the debts due Duncan, and demanded strict proof of same, denying the truthfulness of such allegation. Respondent denied, upon information and belief, that said Duncan was a creditor on date of said conveyance, and that such debt was secured by any deed in trust, or lien of any kind, recorded or unrecorded; but, on the contrary, asserted such to be false and demanded complainants' grounds for such a belief.

Answer further denied adverse or peaceable possession, but alleged that the conveyance to Jones' children was recorded at once, as was also the deed to Rice, and that the latter deed showed on its face that Mrs. Bishop did not join in the conveyance, and that complainants had full knowledge of the rights of Mrs. Bishop and of respondent. Respondent alleged that Harriet Bishop, his wife, died June 8, 1865, and that the fee simple title to her interest in said property descended to her three minor children, all of whom died in Grenada, Miss.; and that respondent's wife died before the deed to Rice, and that the Statute of Limitations did not run against the said minor children; and that adverse and peaceable possession by complainants and those claiming under them for ten years before the institution of the ejectment suit was not true.

Respondent further denied that his wife, Mrs. Harriet Bishop, knew nothing of the deed from Jones, but averred that she was cognizant of same and accepted said conveyance on its execution and claimed it as her own to the day of her death; and that she was fully acquainted with all the facts incident to said conveyance and knew that the property was not to be divided for four years after the execution of said deed, and that respondent's wife died before the expiration of such time. Answer alleged that the grantees farmed the lands for four years from the date of said conveyance and that respondent's wife received only $100 from such property during such time. Respondent admitted instituting the ejectment suit in August, 1880, without tendering to complainants any money, and alleged that he owed them nothing.

Respondent alleged that a part of the land so conveyed by Jones to his children was, after four years from the date of execution of such conveyance, sold for several thousand dollars, and that the proceeds from such sale were divided among the other living children, his wife's children getting nothing.

Answer alleged that complainants' bill was filed for delay, and concluded with prayer for dismissal of the bill and dissolution of the injunction.

The chancellor heard testimony on both sides, denied the relief prayed for by complaints, dismissed their bill, and dissolved the injunction.

APPEALED from Chancery Court, Union county, B. T. KIM-BROUGH, Chancellor.

Affirmed, February 1, 1886.

*Attorneys for appellant, Fontaine & Mitchell.*

*Attorney for appellee, W. H. Fitzgerald.*

Brief of Fontaine & Mitchell:

\* \* \* \* \* \* \* \* \* \* \* \*

In the year 1866, Jones, together with seven of his children, knowing that said conveyance could and would be vacated, sold this land conveyed (by Jones to his children by said voluntary

conveyance) to one Rice under whom appellants claim, and the purchase money was paid directly by Rice to C. G. Mitchell, at the request of Jones, in payment of Jones' indebtedness to Mitchell. Now Mitchell was a creditor of Jones at this time, and before the voluntary conveyance was made could have successfully attacked said voluntary conveyance and subjected the property therein conveyed (the land sued for) to the payment of his debt; which payment to Mitchell he consenting thereto, at Jones (the debtor's) request, had the effect of subrogating Rice to the rights of Mitchell, to subject the said lands to the payment of the purchase money therefor. Staples *v.* Fox, 45 Miss. 680; Slaton *v.* Alcorn, 51 Miss. 72; Sheldon on Subrogation.

And Rice's vendees, appellants in this cause, succeeded to all the rights that Rice had in the premises, although not conveyed to them. Sheldon on Subrogation, § 34. * * *

And again, where at an administrator's or executor's sale of land either devised or descended, however informal or irregular such sale, if purchased in good faith and purchase money paid, and applied to debts of testator or intestate, devisees or heirs are estopped without refunding purchase price. Cole *v.* Johnson, 53 Miss. 94; Gaines *v.* Kennedy, 53 Miss. 104.

Again, complainant's vendor, Rice, so far as defendant is concerned, does not occupy the attitude of a volunteer; he purchased the interest of seven of the volunteer grantees and in order to protect his purchase was compelled to pay off the debts of the said Jones existing at the time, and as to all the land including the interest of defendant should be subrogated to the benefit of the debt. Sheldon on Subrogation, §§ 30, 36, 40, and 129; Slaton *v.* Alcorn, 51 Miss. 72.

Brief of W. H. Fitzgerald:

✳ * * * * * * * * * * *

It is not necessary for the purposes of this case to combat the argument of counsel for appellants on the subject of subrogation.

Dr. Mitchell, the witness, had a debt against Jones before and at the time the conveyance was made by Jones to his children. He says there were other debts besides his; that his was a simple contract debt; that the property was sold to Rice in order to get the money to pay him, and that the money instead of being paid directly to Jones *et al.*, and by Jones paid to him, it was paid to

witness at the request of Jones and witness' debt against Jones was thereby discharged. * * *

Besides the constructive notice that Rice had by the recorded deed from Jones to his children, it is clear from the insertion of J. M. Bishop's name in the deed that he had actual notice that there was an outstanding interest he was not acquiring by the deed. He got, therefore, only what he bargained for and paid his money for, and the appellants, his vendees, have no grounds to complain. * * *

The witness, Dr. Mitchell, to whose rights the appellants are sought to be subrogated, knew very well of the outstanding interest of the Bishop children, and received his money with the knowledge that it was obtained by a sale of the land, less the undivided interest of the Bishop children. * * *

OPINION.—ARNOLD, J., delivered the opinion of the court:

The decree of the court must be affirmed. If the facts alleged by appellants are true, they are not entitled to the relief sought.

Rice, through whom appellants claim, purchased the land in question with notice of appellee's title, and got what he bargained and paid for, and is protected by covenants of warranty in the deed made by his vendors. Rice was a stranger and purchased the land without being compelled to do so, for the preservation of any rights or property of his own, and the doctrine of subrogation does not apply in such case. Slaton v. Alcorn, 51 Miss. 72; Sheldon on Subrogation, § 240 et seq.

*Affirmed.*